for our first case, which is Harris against Saul. Mr. Sutterfield. Thank you, Your Honor. Thank you, Court, Counsel. This case is concerning with regard to a number of aspects, principally, the ALJ's evaluation of the opinion evidence. There's a lot of records that are missing, but going forward with the records that were before the judge, the judge elected to give great weight to the opinion of the state agency reviewing consultants, one of whom did not review a single medical record pertaining to the claimant's psychiatric impairments. And the other whose review is limited to two notes. Essentially, then the judge just had free reign or ALJ took free reign to interpret the remainder of the medical evidence to craft its own RFC and assess the claimant's credibility. So the position of the claimant that the basis of the evidence in front of the judge certainly did not permit him to do so. And with regard to the evaluation of Dr. Boyd's evaluation, the ALJ found that, oh, gee, because this is not reduced into language that I'm ordinarily used to, it's of no use to me. Which calls into question the ability of the administrative law judge to interpret the remainder of the evidence. The court is well aware from case law and from its own experience in terms of reading the different facts in all these types of cases, individuals, psychiatric limitations, ebb and flow, sometimes within hours, much less week to week or month to month. And the issue in these cases is can the individual perform substantial gainful activity, meaning sustained over a period of 12 months. So it's highly problematic that the judge is given great weight to build doctor opinions, mainly the state AC doctors, leapfrogging over the opinion of Dr. Boyd saying, well, I can't understand that. I can't interpret that. If he's incapable of interpreting the impact of somebody being notably distractible, avoids leaving the house, minimal tolerance for stress, emotionally and easily overwhelmed, if he's incapable of interpreting those matters. Mr. Sutterfield, Dr. Lee's opinion is the one you're asking or saying that the ALJ should have put more emphasis on. And Dr. Lee gave a statement that he thought your client was totally disabled. But what underlying treatment records support that opinion? I think the totality of his records support that. If you look at the records, they reflect and part of that is referenced in the history that was missing, that he has tried any number of psychiatric medications and his holster is empty. He has nothing left to do in terms of really managing her care. Those same records reflect that those medications were working. They're working in terms of the lifestyle that she had adopted. If you see when she's at work, she lost her job because of erupting with other individuals. Despite being socially isolated, she ends up with her hospitalization in February 2013. She ends up with her hospitalization in 2016. The totality of the circumstances indicate that this is an individual who is emotionally and mentally fragile. And if you put her in a stress situation of needing to hold a job and show up and perform in accordance with her interactions with other people and all the other types of things that go with work, you're going to end up with someone who is going to have frequent hospitalizations. She's not going to be able to sustain it. So that's the circumstances and that's why the missing records I think are also important just to show that he had in fact run out of bullets. I think that's summarized what he talks about and there's a reference in there in her 2016 hospitalization about how they've tried any number of medications and there's also the same reference in the May 2013 hospitalization. So I was looking in your briefs for some on this issue of missing records for some discussion of the role of Miss Sutterfield or rather Miss Harris's attorney in the hearing, who, as near as I can tell, said a couple of times to the LJ, go ahead without the missing records. Now you're saying that doing so was a reversible error. We would ordinarily treat that kind of thing as an invited error. Certainly seems to put the agency in something of a trick bag where heads we win, tails we get to do it all over again. I think the problem with that is that the records that are missing show basically what I was taught, what I was talking about, and the judge doesn't analyze those, namely that they have. I understand that point. What significance is, should we give the fact that the attorney said, go ahead. I think the question is, do you punish the claimant or do you follow the act, which is, we want to weigh the evidence and I don't know how anybody reviewing the record, which leads me to suspect the attorney that handled the case didn't review the record, but anybody reviewing the record and doing proper analysis is going to say we're missing major amounts of records. We've got a counselor saying she's been on a regular counseling with Dr. Lee. We've got a hospitalization saying she's been on a regular treatment with Dr. Lee and various medications have failed. And then those records are missing. So who does that fall on? Does that fall on a claimant or do you have an administrative logic? Again, when he goes through and he does his analysis of the opinion evidence in terms of supportability and consistency, and when he does his analysis of the RFC, when he does those, he's going to see, wait a minute, there's all these references, records, I'm missing this flag goes up. How can he be expected to do more, Mr. Sutterfield, when Ms. Harris's lawyer represented twice to him that the record was complete? Because as I think I was trying to articulate a minute ago, when he does that analysis, they're like, there's clearly records missing. And not just any records, significant records, the records of the treating psychiatrist, two and a half years. Are there any cases that shift the burden to the ALJ like that? I think NELMS is applicable simply because, and I don't think it's a burden shifting. If you go back and you look at what a judge is supposed to do when they weigh opinion evidence, they're looking for consistency, they're looking for supportability. How are they going to properly weigh that when they come across this evidence and clearly see that they're missing it? They're missing critical evidence. And so it's not so much a burden as opposed to, I'm here to weigh the evidence, and it's clearly not here. And as noted, and I know the HALEX is not something that the court enforces ALJs, but again, as noted in my brief, they do have a process whereby when they're working the case up, they're supposed to review the case and note whether evidence is missing. When you have opinion evidence that he is obligated to review, namely the counselor's record, and the counselor says he has been, she has been treating with Dr. Lee since 2012. And the psychiatric records when she goes to hospital say that she's on ongoing treatment with Dr. Lee. And that they've run out of medications that work, and we're missing those records, and that time period's an issue. I would not call that a burden shifting. I would say, we're here to do a job. Counselor, you've prevented us from doing it. I mean, maybe it would have been easier for him to simply say at the hearing, if there had been proper preparation by his staff too, you don't have these records, and turn to the claimant and say, you know, you do have an attorney here, and that's his job. You might want to have a discussion with him about why he did not get two and a half years of your records from your treating psychiatrist. So that could have been a simple one-sentence statement. At the end of hearing, come back, and now we've got a complete record, and now there's a proper disposition, whether it's favorable or unfavorable. I think it would have been favorable, but whether it's unfavorable, you know, we avoid all of what's happened since the hearing, all these appeals, et cetera, by virtue of just the judge saying, wait a minute, this is, we're clearly missing stuff. We're going to put this, we're going to queue this up again. You've got 60 days to get the records. Go do it. How long would such delays ordinarily take when you, if that's, that has its own costs, right? Well, I think at the administrative level, probably would kick the hearing down 90 days. And I think a competent attorney, by statute, records have to be made available within 30 days. And a competent attorney that's been spanked by an ALJ in front of his client would probably be able to get those records in less than 30 days and get them submitted. Thank you. Thank you, Mr. Sutterfield. I thank you. Ms. Payne. Good morning, Your Honors. May it please the court. Lindsay Payne on behalf of the Commissioner of Social Security. I'd like to begin by addressing Harris's argument about the record because most of her other arguments rely upon this assertion that the record is incomplete. But for this allegation to rise to the level of reversible error, Harris has the burden of proving four things. One, that there are in fact treatment notes that are missing from the record. Two, that the ALJ unreasonably failed to sua sponte expand the record. Three, that the contents of the allegedly missing documents are significant, meaning that Harris has been prejudiced by their omission. And four, that she had a good reason for not producing the records. Now, Harris has failed to meet her burden on all four points. We don't even know, sitting here today, whether additional notes exist. The agency requested all of Dr. Lee's records from February 2012 forward. And what Dr. Lee returned were notes from Harris's 2013 hospital stay and then treatment notes from February 2015 forward. This request by the Commissioner supports the reasonableness of the efforts made to develop the record in this case. As your honors noted, Harris was represented by counsel at the hearing and counsel told the ALJ that there was no need for further record development. Now, it's been two years. Why didn't Dr. Lee's cover sheet that indicated there were over 500 pages and he was only sending the last two years, why didn't that put the ALJ on notice to do more? It's not clear who added that annotation and certainly it wasn't unreasonable for the ALJ to rely on the representations of counsel that we had everything that was relevant to this case. It's your position. It's not clear if that came from Dr. Lee's office. You think somebody else may have put it on there? Presumably, these documents went through Harris's attorney. It's not something that was asked at the hearing who put that on there. But even if we assume it was written by Dr. Lee, that doesn't mean that it necessarily follows that the ALJ here acted unreasonably in relying on counsel's representation that we had everything we needed and that there was no reason for delay. Harris is now arguing before this court today that these missing records allegedly, quote, show that Harris's treatment wasn't working. We don't know that. We don't have the records. And if counsel knows that, why hasn't he produced the records? Harris also attempts to rely on Nelms saying that that supports her case. But Nelms says that mere conjecture that additional records would change the outcome is not enough and conjecture is all we have here. There are also important policy reasons for placing the burden at Harris's feet to produce the records that support her claim of disability. Once Dr. Lee returned his batch of documents, it was Harris who was in the best position to determine whether those documents were complete. It was also Harris who was in the best position to obtain them. She didn't do so. And she hasn't explained why she didn't do so or detailed any efforts over the many years of litigation at this point to obtain those records. Additionally, the record as it currently exists strongly suggests that additional records would not change the outcome here. We've got the two categories of documents that are at issue, the treating psychiatrist Dr. Lee's notes from October 2012 to January 2015, and then the records from Harris's July 2016 hospitalization. With respect to this first category of documents, Harris is simply incorrect when she asserts that the ALJ didn't have any notes between 2012 and 2015. The ALJ had and considered the notes from the May 2013 three-day hospitalization for suicidal ideation. Dr. Lee said that Harris was under a lot of stress due to family circumstances, but her thought processes and perception were intact, and she was discharged three days later, no longer suicidal. While we know that the record does not contain additional documents from Dr. Lee between this May 2013 hospitalization and January 2015, we are not left completely in the dark as to Harris's functioning during that time. We had the notes from her treating physician, Dr. Flynn. Dr. Flynn was normally on a regular basis conducting mental status examinations, and his treatment findings did not reflect extreme symptoms. Harris had a depressed mood at times. She had moderately impaired insight into her own problems, but she wasn't suicidal. She had appropriate demeanor. She maintained normal speech, and she generally had normal thoughts and perceptions. So these notes from Dr. Flynn suggest that additional notes from Dr. Lee wouldn't change the outcome. Turning to the second category of allegedly missing documents, those from Harris's July 2016 hospitalization, there's even less reason to believe that any additional documents from that time period would change the outcome here. Harris was under the care of Dr. Lauer during that hospitalization. The ALJ had and considered Dr. Lauer's summarization of his findings. Dr. Lauer concluded that a recent medication change had caused paranoid thoughts and delusions in Harris. The ALJ also had and considered Dr. Lee's notes from Harris's follow-up visits. Dr. Lee agreed with Dr. Lauer's assessment that this was an adverse reaction to medication. He found that by September 2016, these symptoms had completely resolved, and she no longer showed any signs of hallucinations or delusions. Dr. Lee then recorded fully normal mental status examinations up until the April 2018 ALJ hearing. So rather than striking out on his own and interpreting medical evidence by himself, the ALJ accepted and appropriately relied on the conclusions of Drs. Lauer and Lee that Harris's 2016 exacerbation of symptoms was an adverse reaction to medication that quickly resolved once she discontinued that medication. So Harris has failed in multiple respects with respect to her claim about the record. Turning briefly to Harris's points about the state agency consulting psychologists, Dr. Mayer and Dr. Rosenfeld, her challenge to the consideration of these opinions presupposes that there's some sort of presumption that state agency consultants don't review all the records provided to them. There's no such presumption, and such a presumption would not be consistent with the deferential substantial evidence standard. Both psychologists were given the full record as it existed at that time, which included Dr. Lee's notes from the 2013 hospitalization, which appear in Exhibit 2A of the record. Both psychologists also had Dr. Boyd's consultative examination report, which they found very persuasive. And essentially, Harris is trying to turn the burden on its head and shift the burden to the ALJ to disprove the existence of mental limitations. And that's not how the burden works. She also argues, well, we can't rely on their opinions because this 2016 hospitalization postdated the opinions of the state agency consultants. But again, under this court's precedence, it's only if there was new significant medical evidence that changed the picture so much that we would expect that it changed the state agency consultants' opinions. That's simply not the case here, where Harris had a single exacerbation of symptoms after Dr. Rosenfeld's opinion. But the ALJ fully accepted the assessments of Harris's treatment providers, Dr. Lee and Dr. Lauer, that it was no more than an adverse reaction to medication and that it had, quote-unquote, totally resolved within two months. If there's no further questions from the court, I'd rely on the commissioner's briefing and ask the court to affirm. Thank you, Ms. Payne. The case is taken under advisory.